IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| HOWARD CROWELL and | § | |
| EVELYN G. CROWELL, | § | |
| | § | |
| Plaintiffs, | § | CIVIL ACTION NO. |
| v. | § | |
| | § | SA-03-CA-0686 RF (NN) |
| ALAMO COMMUNITY COLLEGE | § | |
| DISTRICT, | § | |
| TERRI HOFFMANN, | § | |
| BEN PENA, | § | |
| MICHAEL CHRIST, and | § | |
| DON F. ADAMS, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:    Hon. W. Royal Furgeson
       United States District Judge

I. Introduction

The matters before the Court are defendants Alamo Community College District

("ACCD"), Terri Hoffmann ("Hoffmann"), Ben Pena ("Pena"), Michael Crist[1] ("Crist"),

and Don Adams' ("Adams") motion for judgment on the pleadings, no-evidence summary

judgment, and traditional summary judgment (Docket Entry 109), and supplemental motion

(Docket Entry 138).  Also before the Court is defendants' motion to strike portions of Howard

---

[1] Defendant is identified in the pleadings as Michael Christ, and defendants' summary judgment motion refers to him as Christ.  However, the documents offered with the summary judgment motion and response refer to this defendant as  Cpl. Michael Crist.

Crowell's summary judgment affidavit (Docket Entry 125).  By way of the instant motions,

defendants seek to preclude the court from considering portions of plaintiffs' summary judgment

proof and seek judgment dismissing plaintiffs Howard and Evelyn G. Crowell's[2] claims against

them pursuant to Federal Rules of Civil Procedure 12 and 56.

After considering the motions,[3] the response,[4] the reply,[5] defendants' supplemental

motion,[6] and the entirety of the record in this matter, it is my recommendation that defendants'

motion to strike be **<u>GRANTED</u>** in part and **<u>DENIED</u>** in part, and defendants' motion for

summary judgment be **<u>GRANTED</u>** in part and **<u>DENIED</u>** in part, consistent with this

Memorandum and Recommendation.

I have authority to enter this Memorandum and Recommendation under 28 U.S.C.

§ 636(b) and the District Court's Order referring all pretrial matters in this proceeding to me for

disposition by order, or to aid in their disposition by recommendation where my authority as a

Magistrate Judge is statutorily constrained.[7]

## II. <u>Jurisdiction</u>

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, the statute conferring federal

---

[2] In this Memorandum and Recommendation, Howard Crowell will be identified as "Crowell," while Howard and Evelyn Crowell jointly will be "plaintiffs."  Any reference to Evelyn Crowell individually will be Evelyn Crowell or Evelyn.

[3] Docket Entries 109, 125.

[4] Docket Entry 122.

[5] Docket Entry 126.

[6] Docket Entry 138.

[7] Docket Entry 59.

question jurisdiction, 42 U.S.C. §§ 1981, 1983, 2000e-5(f)(3), and 28 U.S.C. § 1367, providing

supplemental jurisdiction over all related claims that form part of the same case or controversy.

### III. Procedural History

On July 18, 2003, plaintiffs commenced this action by filing their original complaint.[8]

They amended the complaint on December 8, 2003,[9] and again on April 8, 2004.[10]  On February

14, 2005, I issued a Memorandum and Recommendation to the District Court recommending that

pending motions to dismiss by defendants be granted in part and denied in part, and that plaintiffs

be permitted to again amend their complaint.[11]  The District Court adopted the Memorandum and

Recommendation over defendants' objection.[12]

Plaintiffs amended their complaint once more on March 31, 2005.[13]  Defendants

responded by filing motions to dismiss.[14]  Plaintiffs later stipulated to the dismissal of all claims

against three defendants, and the District Court entered an Order dismissing the claims with

prejudice.[15]  On December 1, 2005, the remaining defendants filed the instant motion for

---

[8] Docket Entry 1.

[9] Docket Entry 11.

[10] Docket Entry 47.

[11] Docket Entry 72.

[12] Docket Entry 74.

[13] Docket Entry 77.

[14] Docket Entries 83-89.

[15] Docket Entries 105, 106.

judgment on the pleadings or in the alternative summary judgment.[16]  On December 19, 2005, I

issued a Memorandum and Recommendation in which I recommended that plaintiffs be granted a

final opportunity to amend their complaint and that defendants' pending motions to dismiss be

denied as moot.[17]  The District Court approved the Memorandum and Recommendation in its

entirety over defendants' objections.[18]

On February 28, 2006, plaintiffs filed their fifth amended complaint, which is the

operative pleading in this case.[19]  Defendants Hoffmann, Pena, Christ, and Adams filed motions

to dismiss the complaint on March 22, 2006.[20]

On July 14, 2006, I entered an Order pursuant to Federal Rule of Civil Procedure 12(c)

informing the parties that defendants' dispositive motion filed in December 2005 would be

considered solely as a motion for summary judgment pursuant to Federal Rule of Civil Procedure

56.  The Order provided the parties fourteen days to submit any which they wished the court to

consider pertaining to summary judgment.[21]  The parties jointly requested an extension of time to

submit additional briefing,[22] which was granted by order entered on August 1, 2006.[23]  On

August 8, defendants filed a supplemental motion for summary judgment in which they presented

---

[16] Docket Entry 109.

[17] Docket Entry 112.

[18] Docket Entry 127.

[19] Docket Entry 128.

[20] Docket Entries 131, 132, 133, 134.

[21] Docket Entry 135.

[22] Docket Entry 136.

[23] Docket Entry 137.

additional argument.[24]  Neither party submitted additional evidence.

## IV. Issue Presented

Have plaintiffs demonstrated genuine issues of material fact for trial on each of the claims presented against defendants?

## V. Undisputed Facts

Plaintiffs are Howard Crowell, an African American male, and his wife, Evelyn Crowell. Crowell worked as Public Safety Security Officer for Alamo Community College from February 3, 1997 until the summer of 2003.[25]  His duties included patrolling campuses, maintaining the security of the facilities, and responding to reported incidents.[26]

On August 25, 2000, Crowell and another security officer, Alexis Roman ("Roman"), were stationed at the Palo Alto College campus.  A discussion broke out between Crowell and Roman concerning their duties, and the discussion became heated.[27]  Roman rushed past Crowell and proceeded to his vehicle.  Based on previous statements made by Roman, Crowell believed that Roman might have a weapon in his vehicle.  Crowell reported to his supervisor, David Dominguez ("Dominguez"), that Roman might have a weapon, and that Crowell feared for his safety.[28]  Dominguez responded to Crowell's call and after receiving Roman's consent, searched

---

[24] Docket Entry 138.

[25] Docket Entry 122, Exh. 1 at 1.

[26] **Id.**

[27] Crowell and Roman had a tense working relationship. According to Crowell, Roman had informed him that as long as Roman's skin was lighter in color than Crowell's, Roman did not have to do anything Crowell told him to do.  Docket Entries 109, Exh. B at 144, 209, and 122, Exh. 1 at 2.

[28] Docket Entry 122, Exh. 1 at 1-2.

5

Roman's vehicle.  Dominguez did not find a weapon.[29]

In response to these events, Chief Hoffmann issued a memo to Crowell dated September 11, 2000.  Among other things, the memo informed Crowell that Hoffmann wanted to meet with him concerning his allegation that Roman had a weapon.  Hoffmann cautioned Crowell about making allegations based on mere suspicion, and asked him to work with all the employees of the department in a positive and progressive manner.[30]  Crowell believed that this memo with its admonishment that he strive to work better with his fellow officers resolved the matter concerning his allegations against Roman.[31]  Likewise, the panel that later heard Crowell's grievance determined that Hoffmann had addressed and concluded her action on the incident through her September 11, 2000 memo to Crowell and through their meeting.[32]

On October 19, 2000, Crowell attended a baton training class at the San Antonio College campus conducted by Ben Lively ("Lively"), a police officer.  Adams, who had recently become the training supervisor for ACCD, also attended the training class.  During the class, Lively made a comment using the term "ass" and told a joke to the class about "a man wearing woman's panties with his penis hanging out."[33]  According to Crowell, Lively invited the students to speak up if they did not argee with something that he said.[34]  Crowell stood and told Lively that his use of the word "ass" and his crude joke were not appropriate because a young lady, his sister-in-law,

---

[29] Docket Entry 109, Exh. B at 188-202.

[30] Docket Entry 122, Exh. 1-c.

[31] Docket Entry 122, Exh. 1 at 2.

[32] Docket Entry 122, Exh. 1-k at 2.

[33] Docket Entries 122, Exh. 1 at 2, and 128 at ¶ 12.

[34] Docket Entry 109, Exh. B at 161.

also an ACCD employee, was present.  Crowell claimed that his sister-in-law was a religious woman and was offended by the use of the term and the joke.[35]

Adams removed Crowell from the class and admonished him about being disrespectful to the instructor.  Adams claimed that Crowell had spoken very loudly and in a challenging manner. He informed Crowell that there was an appropriate way to voice his displeasure to the instructor, and Crowell's response was inappropriate.[36]  Crowell claims that during his discussion with Adams, Adams said "K...K...K" in a racially derogatory and intimidating manner while Crowell was speaking.[37]  Adams denies any discriminatory motivation and claims that he was periodically saying "okay."[38]

On November 16, 2000, Crowell sent a complaint to Hoffmann and Vice Chancellor Ernest Martinez informing them of his objection to Lively's comments to the class, and Adams' response to his speaking out.  Crowell stated that Adams muttered the letters KKK and he believed that it was a "code sign for members of the clan."  Crowell alleged that his rights had been violated and asked for Hoffmann and Chancellor Martinez's help in resolving the matter and obtaining baton training for him.  Crowell copied the letter to ACCD board members Donald McClure and Jesse Gonzales.[39]

Hoffmann responded to Crowell's complaint with a memorandum dated January 25,

---

[35] Docket Entries 109, Exh. B at 161; 128, Exh. 1 at 2.

[36] Docket Entry 122, Exh. 3 at 32-39.

[37] Docket Entry 122, Exh. 1 at 2.

[38] Docket Entry 122, Exh. 3 at 39.

[39] Docket Entry 122, Exh. 1-d.

2001.[40]  Hoffmann notified Crowell that the Human Resources Department investigated his previous complaints and the results of the investigation were inconclusive.  She also notified him that Adams had filed a complaint against Crowell concerning the baton training incident. Hoffmann stated that the issue of profanity in the classroom had been addressed and corrected. Hoffmann then notified Crowell that a complaint had been filed against him alleging that he had used obscene and vulgar language toward a patrol officer of the department.[41]

Crowell responded to Hoffmann on February 2, 2001, requesting information concerning the vulgar language complaint and asserting that he had a constitutional right to free speech concerning his statements in the training class.[42]  Crowell followed with another letter on February 27, 2001, again requesting information about the complaint against him and informing Hoffmann that he had asked Angela Campos, Ombudsman, for assistance.[43]  On February 27, 2001, Crowell wrote to the Board of Trustees of the ACCD requesting that they investigate his claim that Adams discriminated against him and violated his constitutional rights when Adams removed him from the baton training class.[44]

In April 2001, Cpl. Crist prepared a report concerning Crowell's report of the possibility that Roman had a weapon in his possession on August 25, 2000.  Adams checked the report and

---

[40] Docket Entry 122, Exh. 1-e.

[41] **Id.**

[42] Docket Entry 122, Exh. 1-f.

[43] Docket Entry 122, Exh. 1-g.

[44] Docket Entry 122, Exh. 1-h.  In his letter, Crowell mentions that he spoke to the Board of Trustees at their regular meeting on February 20, 2001.

gave Crist approval to give the report to the Bexar County District Attorney.[45]  In his report Crist stated that there were sufficient grounds to file a charge of making a false alarm and report to a police officer.[46]  Thereafter, on November 19, 2001, the District Attorney accepted a charge of knowingly making a false statement that was material to a criminal investigation, and presented an affidavit for a warrant for Crowell's arrest.[47]  As a result, a warrant for Crowell's arrest issued.

In July 2002, Crowell agreed to serve as a witness for Angela Campos in her internal grievance proceeding.  The ACCD fired Ms. Campos in April 2001, two months after Crowell informed Hoffmann and Vice Chancellor Martinez that Ms. Campos was assisting Crowell in her capacity as Ombudsman.  Ms. Campos had been arrested in November 2001 on charges brought by Adams and the ACCD for tampering with government records.  The charges against Ms. Campos were later dismissed.[48]

On July 19, 2002, Crist called Crowell at home and requested that Crowell "come in" while he was off duty to talk about an investigation.  Crist did not inform Crowell about the outstanding arrest warrant and would not give him any information about the investigation. Crowell refused to "come in" and talk to Crist.[49]  Pena called Crowell's home and spoke to Evelyn Crowell.  He told Evelyn that her husband must come to a specific campus so that Pena

---

[45] Docket Entry 122, Exh. 1 at 3, Exh. 4 at 19-20.

[46] Docket Entry 122, Exh. 4 at 26-27.

[47] Docket Entry 122, Exh. 1-I.

[48] Docket Entry 122, Exh. 1 at 3-4.

[49] Docket Entries 122, Exh. 1 at 4, 109, Exh. B at 221.

could talk to him.  Evelyn stated that Pena would not tell her why he wanted to talk to her husband.  According to Evelyn, Pena spoke loudly, and made her nervous.[50]

When Crowell went to work at the Palo Alto campus on the evening of July 19, 2002, he was arrested on the November 2001 warrant.  Adams, Pena, Crist, and Crowell's supervisor, Sgt. Guyer were present.  Without informing him of the warrant, Pena and Crist grabbed Crowell. Pena bent one arm behind Crowell's back, and put handcuffs on Crowell.  Crowell's coat was torn during the arrest.[51]  Adams watched the arrest sitting in a chair and smiling, while Sgt. Guyer was up against the wall with a shocked expression on his face.[52]  Crowell complained that the handcuffs were too tight, and Pena loosened them.[53]  Crist and Pena took Crowell to the Bexar County jail where he spent over eleven hours.[54]

On July 25, 2002, Adams notified Crowell that his employment with the ACCD Department of Public Safety was terminated effective that same day.  Adams cited as grounds for dismissal Crowell's call to Dominguez reporting that Roman had a gun in his vehicle, Crowell's failure to meet with Crist, Crowell's failure to return Pena's call and subsequent calls, Crowell's arrest on an outstanding warrant for making a False Report to a Peace Officer, and violating ACCD and DPS rules (forging or falsifying an official District record or report and insubordination).[55]

---

[50] Docket Entry 109, Exh. C at 67-71.

[51] Docket Entry 122, Exh. 1 at 4.

[52] Docket Entry 109, Exh. A at 232-236.

[53] Docket Entry 109, Exh. A at 235.

[54] Docket Entry 109, Exh. A at 238.

[55] Docket Entry 122, Exh. 1-j.

Crowell hired counsel and filed a grievance contesting his discharge from employment. Hoffmann and Vice Chancellor Martinez refused to reinstate Crowell.[56]  A grievance panel ultimately determined that the entire incident involved no more than bad communication and minor misjudgments and reversed Crowell's termination of employment.[57]  The ACCD reinstated Crowell, and he returned to work in January 2003.[58]  The District Attorney moved to dismiss the charges against Crowell because of insufficient evidence, and a Bexar County Court dismissed the case on February 20, 2003.[59]

After he returned to work, Crowell was assigned to the new northeast campus to work by himself.  Crowell was denied pay for time used to obtain his uniform.  He claims that he had difficulty obtaining reinstatement of his leave.  He also perceived that his fellow officers were less collegial when he saw them, and alleges that he was ostracized.  Crowell resigned from his safety officer position with the ACCD in June 2003.[60]

## VI. Analysis

**A. Summary judgment standard.**

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Rule 56 provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[56] Docket Entry 122, Exh. 1 at 4.

[57] Docket Entry 122, Exh. 1-k at 1-2.

[58] Docket Entry 122, Exh. 1 at 4.

[59] Docket Entry 122, Exh. 1-m.

[60] Docket Entry 122, Exh. 1 at 5.

> together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to
> judgment as a matter of law.[61]

Rule 56 requires that there be no genuine issue of material fact.  A fact is material if it might affect the outcome of the lawsuit under the governing law.[62]  A dispute concerning a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[63]  Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted.[64]

The movant on a summary judgment motion bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record which it alleges demonstrate the absence of a genuine issue of material fact.[65]  To satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense, or if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense.[66]  Regardless of whether the movant accompanies its summary judgment motion with

---

[61] Fed. R. Civ. P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986).

[62] **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986); **Thomas v. LTV Corp.**, 39 F.3d 611, 616 (5th Cir. 1994).

[63] **Anderson**, 477 U.S. at 248; **Wise v. E.I. DuPont De Nemours & Co.**, 58 F.3d 193, 195 (5th Cir. 1995).

[64] **Anderson**, 477 U.S. at 249.

[65] **Celotex Corp.**, 477 U.S. at 323.

[66] **Edwards v. Aguillard**, 482 U.S. 578, 595 n.16 (1987) (citing **Celotex Corp.**, 477 U.S. at 323).

affidavits or other evidentiary materials, the motion must be granted if the evidence before the

court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

satisfied.[67]  Once the movant has carried that burden, the burden then shifts to the party opposing

the motion to present affirmative evidence in order to defeat a properly supported motion for

summary judgment.[68]

Importantly, the nonmoving party cannot discharge this burden by referring to the mere

allegations or denials of the nonmoving party's pleadings.[69]  Rather, the nonmovant must, either

by submitting opposing evidentiary documents or by referring to evidentiary documents already

in the record, set out specific facts showing the existence of a genuine issue for trial.[70]  When

determining whether a genuine issue of material fact exists, the court will not weigh the

evidence or evaluate the credibility of witnesses.[71]  The court will look at the record in the light

most favorable to the nonmovant drawing all inferences most favorable to that party.[72]

Nevertheless, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate

to satisfy the nonmovant's burden."[73]  Summary judgment is mandated if the nonmovant fails to

---

[67] **Celotex Corp.**, 477 U.S. at 323.

[68] **Anderson**, 477 U.S. at 257.

[69] Fed. R. Civ. P. 56(e); **Anderson**, 477 U.S. at 250; **State of Texas v. Thompson**, 70 F.3d 390, 393 (5th Cir. 1995).

[70] **Celotex Corp.**, 477 U.S. at 324; **Fields v. City of South Houston, Texas**, 922 F.2d 1183, 1187 (5th Cir. 1991); **Neff v. American Dairy Queen Corp.**, 58 F.3d 1063, 1065 (5th Cir. 1995).

[71] **Caboni v. General Motors Corp.**, 278 F.3d 448, 451 (5th Cir. 2002).

[72] **Hibernia Nat'l Bank v. Carner**, 997 F.2d 94, 97 (5th Cir. 1993).  **See also Little v. Liquid Air Corp.**, 37 F.3d 1069, 1075 (5th Cir. 1994) (holding that a nonmovant cannot discharge her burden with doubt as to the material facts, by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence).

[73] **See Douglass v. United Services Auto. Ass'n**, 79 F.3d 1415, 1429 (5th Cir. 1996) (citing **Forsyth v. Barr**, 19 F.3d 1527, 1533 (5th Cir. 1994)).

make a showing sufficient to establish the existence of an element essential to his or her case on which he or she bears the burden of proof at trial.[74]  Accordingly, summary judgment motions permit the court to resolve lawsuits without the necessity of trials if there is no genuine dispute as to any material facts and the moving party is entitled to judgment as a matter of law.[75]

### B. Defendants' motion to strike.

At the outset, defendants object to parts of Crowell's affidavit offered in support of his resistance to summary judgment, and ask that the identified portions be struck and not considered in determining the motion for summary judgment.[76]  In particular, defendants object to Crowell's statements (1) that Adams said "K...K...K" in a manner "that in my mind was clearly done in a racially derogatory and intimidating manner;" (2) that Vice Chancellor Martinez told Jesse Gonzales that "I think we need to fire him" (referring to Crowell); (3) that Crowell "learned that in the Spring of 2002, [he] was subjected to an illegal surveillance and audio/video taping, in violation of federal wiretap laws;" (4) that Derrick Patten ("Patten") advised him that Adams said, "we've got him now" when Adams saw the "illegal surveillance" tape; (5) that Crowell continued to be retaliated against after he was reinstated in January 2003; and (6) that Crowell was present at the deposition of Patten at which time Patten testified that he believed that Adams and Hoffmann were out to get Crowell, Patten had informed Adams and Hoffmann that the audio/video tape was illegal, and that Patten has suffered retaliation and isolation since his

---

[74] **Celotex Corp.**, 477 U.S. at 322-23.

[75] **Fields**, 922 F.2d at 1187.

[76] Docket Entry 125.

reinstatement just like Crowell.[77]

Relevant to the motion to strike, Rule 56(e) instructs:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits....

Under Rule 56(e) affidavits offered to support a summary judgment motion must meet three requirements.  The affidavit must be made on personal knowledge, must set forth facts that would be admissible in evidence, and affirmatively show that the affiant is competent to testify to the matters stated in the affidavit.[78]  If the affidavit fails to meet any of these requirements, a motion to strike that sets forth specific objections is the proper method for the opposing party to challenge the affidavit.[79]  An opposing party may also move to strike an affidavit supporting a motion for summary judgment that contains conclusory statements or statements that constitute hearsay.[80]  If only portions of the affidavit are objectionable, the court should disregard the inadmissable portions and consider the remaining parts of the affidavit in determining the motion for summary judgment.[81]  A court has broad discretion to grant or deny a motion to strike.[82]

---

[77] Docket Entry 125 at 2-4.

[78] **Casas Office Machines, Inc. v. Mita Copystar America, Inc.**, 42 F.3d 668, 682 (1st Cir. 1984).

[79] **Rushing v. Kansas City Southern Ry. Co.**, 185 F.3d 496, 506 (5th Cir.1990), superceded by statute on other grounds as noted in **Mathis v. Exxon Corp.**, 302 F.3d 448, 459 n. 16 (5th Cir.2002).

[80] **Spector v. Experian Information Services Inc.**, 321 F.Supp.2d 348, 352 (D.Conn. 2004).

[81] **Lee v. National Life Assurance Co. of Canada**, 632 F.2d 524, 529  (5th Cir.1980).

[82] **Canady v. Erbe Elektromedizin GmbH**, 384 F.Supp.2d 176, 180 (D.D.C. 2005).

Pertinent to the motion to strike is the Hearsay Rule, which provides that hearsay is not admissible except as otherwise provided by the Federal Rules of Evidence.[83]  The Rules define "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[84]  In the definition of hearsay, a "declarant" is a "person who makes a statement,"[85] and a "statement" is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion."[86]  Under Rule 56(e), documents containing hearsay statements, that would not be admissible as testimony at trial, may not be set forth in an affidavit to support a motion for summary judgment.[87]

In this case, Crowell made statements in his affidavit containing information provided to him by Jesse Gonzales ("Gonzales") and Patten (listed as Nos. 2, 4, and 6 on page 14 above). The statements are not based on Crowell's personal knowledge.  Crowell offers the statements for the proof of the matters asserted by Gonzales and Patten.  Consequently, these statements constitute hearsay.  Crowell does not offer any exception to the hearsay rule that would allow these statements to be admitted as evidence.  Therefore, defendants' motion to strike those portions of Crowell's affidavit, identified as defendants' objections Nos. 2, 4, and 6, should be granted.

---

[83] Fed. R. Evid. 802.

[84] Fed. R. Evid. 801(c).

[85] Fed. R. Evid. 801(b).

[86] Fed. R. Evid. 801(a).

[87] **H. Sand & Co., Inc. v. Airtemp Corp.**, 934 F.2d 450, 454-455 (2d Cir. 1991).

As to defendants' other objections, plaintiff's statements will be considered and given such weight as is appropriate.  Crowell is competent to testify as to his perceptions and emotions when speaking to Adams, and to his general belief that defendants retaliated against him after he was reinstated.  Crowell's statement that he was subject to audio/video taping can be readily separated from his opinion on the illegality of the taping.  Further, the record contains Patten's deposition testimony relating to the audio/video taping of Crowell, Patten's observations concerning Hoffmann and Adams' treatment of Crowell, and Patten's perception of his treatment and Crowell's treatment after they were reinstated.  Consequently, Crowell's affidavit statements relating to these matters are at most redundant.

Based on the foregoing, defendants' motion to strike portions of Crowell's affidavit should be **<u>GRANTED</u>** in part, and **<u>DENIED</u>** in part, as set forth above.

## C. Plaintiffs' causes of action.

As noted in the procedural history of the case, plaintiffs amended their complaint on February 28, 2006, and this fifth version is the operative complaint in the case.  The amended complaint has the same format as their previous complaints and contains additional factual details.

In response to defendants' motion for summary judgment, Crowell expressly abandoned his claims that ACCD and its employees violated his rights to due process and equal protection. He also abandoned his claim of invasion of privacy and intentional infliction of emotional distress ("IIED").

Based on the amended pleadings and the summary judgment documents, plaintiffs are pursuing the following claims against defendants:

17

(1) the ACCD violated Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e by retaliating against Crowell in response to his opposition to discrimination.

(2) the ACCD discriminated against Crowell on the basis of his race in violation of Title VII.

(3) the ACCD, Hoffmann, Adams, Pena, and Crist violated 42 U.S.C. § 1983 by retaliating against Crowell for exercising his first Amendment Free speech rights.

(4) the ACCD violated the Texas Commission on Human Rights Act ("TCHRA") by discriminating against him based on race and retaliating against him in violation of Texas Labor Code §§ 21.051 and 21.055.[88]

(5) Hoffmann, Adams, and Crist defamed Crowell by charging him with giving a false statement material to a criminal investigation.

(6) Hoffmann, Adams, Pena, and Crist maliciously prosecuted Crowell on the false criminal charge.

(7) Hoffmann, Adams, Pena, and Crist assaulted Crowell when they arrested him on the false criminal charge.

(8) Hoffmann, Adams, Pena, and Crist intentionally inflicted emotional distress on Evelyn Crowell.

(9) ACCD constructively discharged Crowell from employment by making his work environment unbearable after his reinstatement.[89]

Plaintiffs also alleged that any act done by ACCD's employees was done with ACCD's

full authorization and authority.  Therefore, plaintiffs allege that the ACCD is equally liable on

---

[88] Plaintiffs did not identify the TCHRA claim as a separate cause of action in their response to defendants' summary judgment motion.  They included TCHRA violations along with allegations of Title VII violations in their amended complaint.  As will be discussed further, TCHRA violations are analyzed using the Title VII analytical framework.  Accordingly, the TCHRA and Title VII claims will be considered together.

[89] Crowell did not identify "constructive discharge" as a separate cause of action, but included "constructive discharge" as an adverse employment action in conjunction with his discrimination and retaliation claims.

plaintiffs' claims against Hoffmann, Adams, Pena, and Crist.[90]

**1. Crowell's discrimination and retaliation claims.**

**a. Unlawful employment practices under Title VII.**

Title VII makes it unlawful for an employer to

> fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...[91]

It is also an unlawful employment practice under Title VII

> for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.[92]

Actions for employment discrimination are subject to a burden shifting analytical framework.  First, the employee alleging the discrimination bears the burden of proving a *prima facie* case of discrimination based on an adverse employment action.  If he or she does so, the burden then shifts to the employer to establish a legitimate reason for the adverse action.  When the employer proves a lawful, nondiscriminatory reason for the adverse action, the burden then shifts back to the plaintiff-employee to show that the alleged nondiscriminatory reason was mere pretext for discriminatory conduct[93] or that the defendant's nondiscriminatory reason was only

---

[90] Docket Entry 128 at ¶ 26.

[91] 42 U.S.C. § 2000e-2(a)(1).

[92] 42 U.S.C. § 2000e-3(a).

[93] <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 (2000).

one of the reasons for its conduct while plaintiff's status as a member of a protected class is another motivating factor in the conduct (mixed motive alternatives).[94]

### b. Unlawful employment practices under the TCHRA.

Like Title VII, the TCHRA makes discriminatory employment practices unlawful, and provides aggrieved employees with a comprehensive review system whereby employees can seek relief from unlawful employment practices.  The TCHRA provides in relevant part:

> An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.[95]

Furthermore, the TCHRA prohibits retaliation against employees for exercising their rights under the Act.

> An employer, labor union, or employment agency commits an unlawful employment practice if the employer, labor union, or employment agency retaliates or discriminates against a person who, under this chapter:
> (1) opposes a discriminatory practice;
> (2) makes or files a charge;
> (3) files a complaint; or
> (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.[96]

---

[94] **See also Torrez v. Milk Products, L.P.**, 402 F.Supp.2d 773, 776-77 (W.D. Tex. 2005) (explaining the **McDonnel Douglas** framework and adding the mixed motive element).

[95] Tex. Lab. Code § 21.051.

[96] Tex. Lab. Code § 21.055.

In enacting the TCHRA, the Texas legislature intended to correlate state and federal law, and to secure freedom from discrimination for persons in the state.[97]  Accordingly, courts considering employment discrimination cases under the TCHRA utilize the "burden-shifting" analysis established by the United State Supreme Court for Title VII cases.[98]

### c.  Has Crowell demonstrated genuine issues of material fact for trial that defendants discriminated against him because of his race in violation of Title VII and the TCHRA?

"Relief under Title VII is available only against an employer, not an individual supervisor or fellow employee."[99]  Consequently, Crowell may only seek Title VII relief from defendant ACCD.

To establish a *prima facie* case of racial discrimination, a plaintiff must demonstrate that he or she was (1) a member of a protected class, (2) qualified for the position held, (3) subject to an adverse employment action, and (4) treated differently from others similarly situated.[100]  The "adverse action" taken by the employer must be an ultimate employment decision, such as one involving hiring, discharging, granting leave, promoting, or compensating.[101]

A plaintiff can prove that he or she was subjected to a discriminatory adverse

---

[97] Tex. Lab. Code § 21.001.

[98] **Spinks v. Trugreen Landcare, L.L.C.**, 322 F.Supp.2d 784, 791 (S.D.Tex.2004); **M.D. Anderson Hosp. and Tumor Institute v. Willrich**, 28 S.W.3d 22, 24 (Tex. 2000) ("Texas courts have looked to federal law in interpreting the TCHRA's provisions.").

[99] **Foley v. University of Houston System**, 355 F.3d 333, 340 n. 8 (5th Cir. 2003) (citing **Grant v. Lone Star Co.**, 21 F.3d 649, 651-53 (5th Cir.1994)).

[100] **Abarca v. Metropolitan Transit Authority**, 404 F.3d 938, 941 (5th Cir. 2005); **Raggs v. Mississippi Power & Light Co.**,  278 F.3d 463, 468 (5th Cir. 2002).

[101] **Hernandez v. Crawford Bldg. Material Co.**, 321 F.3d 528, 531-32 (5th Cir. 2003) (citing **Dollis v. Rubin**, 77 F.3d 777, 781-82 (5th Cir.1997)).

employment action through direct or circumstantial evidence.  Evidence of persons in authority evincing racial animus by using racial epithets or slurs constitutes direct evidence of discrimination.  Statements or documents that show improper criteria served as a basis for the adverse employment action are also direct evidence of discrimination.[102]

The ACCD does not dispute that Crowell has established the first two elements of his *prima facie* case.  However, the ACCD contends that Crowell did not suffer an adverse employment action because the ACCD reinstated Crowell to his former position with back pay and benefits.  The ACCD argues that after being reinstated, Crowell voluntarily resigned in June 2003, and denies the allegation that it constructively discharged Crowell.

Defendant ACCD is correct that Crowell has not established that he was constructively discharged.

> To prove constructive discharge, a plaintiff must prove that working conditions are so intolerable that "a reasonable person would have felt compelled to resign."  The environment must be "something more" than that present in a harassment or hostile work environment claim; a plaintiff must show a "'worse case' harassment scenario, harassment ratcheted up to the breaking point."[103]

Crowell's main complaint concerning his treatment after reinstatement was that the ACCD assigned him to patrol the northeast campus alone.  Crowell acknowledged that the northeast campus was closer to his home than the other duty stations.  Furthermore, the campus is small, and all the safety officers assigned there work alone.  Crowell complained that he felt

---

[102] **Jones v. Robinson Property Group, L.P.**, 427 F.3d 987, 993 (5th Cir. 2005).

[103] **Easterling v. School Bd. of Concordia Parish**, No. 05-30868, 2006 WL 2092503, *2 (5th Cir. July 28, 2006) (quoting **Pennsylvania State Police v. Suders**, 542 U.S. 129, 141, 147-48 (2004)).

22

isolated and missed the camaraderie of his fellow officers. Crowell also complained that he had difficulty getting his benefits reinstated (though he succeeded), and he did not receive compensation for the time he spent picking up his uniforms.

Taken together, these allegations do not reach the level of severity required to demonstrate that the working conditions were so intolerable that a reasonable person would be compelled to resign. Consequently, Crowell has failed to establish that the ACCD constructively discharged him from his employment.

The Court need not address whether Crowell has established an adverse employment action because he fails to establish the fourth element of his *prima facie* case for racial discrimination; specifically he has failed to provide competent summary judgment proof that he was treated differently than other similarly situated safety officers because of his race. To show direct evidence of racial animus, Crowell contends that Adams referred to the Ku Klux Klan in their conversation at the baton training session. Even if the Court discounts Adam's contention that he was saying 'kay (as in okay), and not simply "K" as Crowell alleges, the evidence does not show that Adams was speaking in code or referring to the Ku Klux Klan. Plaintiff does not offer any other direct evidence of Adams or any other supervisor's racial animus to African Americans.[104]

None of the "circumstantial" proof offered by Crowell supports a finding that he was

---

[104] In his affidavit Patten claims that he believes that Adams discriminated based on race, but admits that he does not have any direct proof; he merely feels that Adams is prejudiced against African Americans. Crowell points to Patten's testimony as direct proof of Adam's racial animus. It should be noted that Patten testified that Hoffmann discriminated against Crowell because "It was Howard'" and not because of Crowell's race. Docket Entry 122, Exh. 7 at 115. The only evidence of a racial slur is Crowell's allegation that Roman, another officer and not Crowell's superior, stated that as long as the color of his skin was lighter than Crowell's, then he did not have to take orders from Crowell. Docket Entry 122, Exh. 1 at 2.

treated differently than similarly situated individuals because of his race.  Hoffmann told Patten, an African American, that Crowell was "a pain in the ass, do something with him."[105]  Adams laughed after viewing a videotape in which Crowell used a vulgarity, and sounded elated when telling Patten of Crowell's arrest.[106]  While the evidence shows a certain level of animosity towards Crowell personally, the evidence does not show that the animosity is because of Crowell's race.

Based on the evidence, Crowell has failed to establish a *prima facie* case of racial discrimination under Title VII and the TCHRA.  Accordingly, the ACCD's motion for summary judgment on these claims should be **GRANTED**.

### d. Has Crowell demonstrated genuine issues of material fact for trial that defendant ACCD retaliated against plaintiff in violation of Title VII and the TCHRA?

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he or she engaged in a protected activity that Title VII protects; (2) the employer carried out an adverse employment action; and (3) a causal nexus exists between his or her protected activity and defendant's adverse action.[107]  The causal connection is cause-in-fact or "but for" causation, requiring the plaintiff to show that "but for" engaging in the protected activity he or she would not have been subjected to the employer's actions.[108]

The United States Supreme Court recently clarified the standard for what constitutes an

---

[105] Docket Entry 122, Exh. 7 at 113.

[106] Docket Entry 122, Exh. 7 at 138, 156.

[107] **Harvill v. Westward Comme'ns, L.L.C.**, 433 F.3d 428, 439 (5th Cir. 2005).

[108] **Jack v. Texaco Research Center**, 743 F.2d 1129, 1131 (5th Cir. 1984); **Spinks**, 322 F.Supp.2d at 796 (identifying the elements of retaliation under the TCHRA).

adverse employment action in retaliation cases.[109]  In **Burlington Northern and Santa Fe Railway Company v. White,** [110] the Supreme Court adopted the construction of "adverse employment action" which had used by the Seventh and District of Columbia Circuits.  "An 'adverse employment action' is now one that a reasonable employee would find to be materially adverse, i.e., one that might dissuade a reasonable worker from making or supporting a charge of discrimination under Title VII of the Civil Rights Act of 1964."[111]

Crowell has established a *prima facie* case of retaliation.  Crowell objected to the baton trainer Lively's use of the term "ass" and the telling of a crude joke by Lively, the baton trainer, during a training session where a young woman was in attendance.  He then complained to his superior Adams, Adam's superior Hoffmann, and to members of the Board of Trustees.

Taken in the light most favorable to Crowell, Crowell opposed discrimination based on gender in the form of sexual harassment and a hostile work environment.  Discrimination based on sex that creates a hostile work environment is an unlawful employment practice in violation of Title VII.[112]  The conduct opposed does not need to rise to actual discrimination; all that is required to establish a *prima facie* case is that Crowell reasonably believed that Lively's actions constituted sexual harassment.[113]  Crowell's action in opposing gender discrimination establishes

---

[109] **See** **Sabzevari v. Reliable Life Ins. Co.**, No. H-03-3240, 2006 WL 2336909, *2 (S.D. Tex. Aug. 10, 2006) (recognizing the new standard set forth by Supreme Court supplanted the "ultimate employment decision" used by the 5th Circuit in retaliation cases).

[110] 548 U.S. —, 126 S.Ct. 2405, 2415 (2006).

[111] **Id.**

[112] **Shepherd v. Comptroller of Public Accounts of State of Texas**, 168 F.3d 871, 873 (5th Cir. 1999).

[113] **Payne v. McLemore's Wholesale & Retail Stores**, 654 F.2d 1130, 1140 (5th Cir. 1981).

the first element of his retaliation claim.

As explained above, Crowell cannot show that the ACCD constructively discharged him, but the ACCD's termination of his employment alone constitutes an adverse employment action sufficient to meet the second element of his retaliation case.

Finally, Crowell has offered sufficient evidence to establish a causal connection between his objecting to what he believed to be sexual harassment and defendants' conduct. Adams gave as reasons for Crowell's dismissal, Crowell's report that Roman had a gun in his vehicle, Crowell's failure respond to Crist and Pena's calls for him to meet and discuss an internal investigation, and Crowell's subsequent arrest. Adams also cited falsification of an official record and insubordination as grounds for dismissal. Most troubling of the reasons given is the criminal complaint and Crowell's arrest on the Bexar County warrant for making a false statement that was material to a criminal investigation.

Crowell made the allegation that Roman might have a weapon in August 2000. In September 2000, Hoffmann addressed Crowell's allegation and cautioned him to be accurate and credible before making allegations. She also asked him to strive to work in a positive manner with all his fellow employees. Crowell believed that the entire matter had been addressed. Over a year later in November 2001, Crist took a complaint to the Bexar County District Attorney which resulted in a warrant being issued for Crowell's arrest. After Crowell continued to pursue his complaint, addressed the Board of Trustees, and agreed to testify in Campo's grievance proceeding, Hoffmann and Adams decided to execute the arrest warrant in July 2002.

In executing the warrant, Adams did not follow the normal procedure of notifying the individual that an arrest warrant was outstanding, and then walking the person "downtown." In

26

Crowell's case, defendants called Crowell's house early in the morning and told him they wanted to talk to him personally.  They did not give him a reason to come in during his time off, and did not tell him to come to work.  When Crowell arrived to work his shift, Adams did not call him to his office, disclose the warrant, or give Crowell the opportunity to cooperate.  Instead, Crist and Pena grabbed Crowell, handcuffed him, and took him "downtown."

A Bexar County Court ultimately dismissed the case against Crowell on the District Attorney's motion to dismiss due to insufficient evidence.  The grievance panel found that Crowell's termination was not proper because the incident with Roman was addressed and finalized in September 2000.  The panel further found that Crowell's alleged insubordination occurred two years after the incident with Roman.

The Fifth Circuit has noted that the combination of suspicious timing along with other evidence of pretext can be sufficient to defeat a summary judgment motion.[114]  The timing of Crowell's arrest and termination, the method by which he was taken into custody, and evidence of Hoffmann and Adams' animosity to Crowell provide sufficient evidence for plaintiff's claim of retaliation to survive summary judgment.  Accordingly, the ACCD's motion for summary judgment on Crowell's Title VII and TCHRA claims of retaliation should be **DENIED**.

**e. Has Crowell demonstrated genuine issues of material fact for trial that defendants Hoffmann, Adams, Crist, and Pena violated 42 U.S.C. § 1981 by discriminating against Crowell base on his race?**

Crowell claims that Hoffmann, Adams, Crist, and Pena should be held liable for racial

---

[114] **Evans v. City of Houston**, 246 F.3d 344, 356 (5th Cir. 2001).

discrimination in violation of 42 U.S.C. § 1981.[115]  Section 1981 provides that all persons in the

United States shall have the same right to make and enforce contracts.  The Fifth Circuit uses the

same analytical framework when considering claims of racial discrimination and retaliation

based on Title VII and 42 U.S.C. § 1981.[116]  As explained above in the Title VII race

discrimination analysis, Crowell failed to establish the fourth element of a *prima facie* case of

racial discrimination because he failed to show that he was treated differently from similarly

situated safety officers based on his race.  Accordingly, defendants Hoffmann, Adams, Crist, and

Pena's motion for summary judgement on Crowell's 42 U.S.C. § 1981 claim should be

**GRANTED**.

     **f. Has Crowell demonstrated genuine issues of material fact for trial that defendants
violated 42 U.S.C. § 1983 by retaliating against Crowell for exercising his First Amendment
free speech rights?**

     Section 1983 provides that any person who, under color of state law, deprives another of

"any rights, privileges or immunities secured by the Constitution and laws shall be liable to the

party injured in an action at law, suit in equity, or other proper proceeding for redress...."[117]  The

statute does not create a right; instead it creates a remedy for the violation of the rights and

privileges that it designates.  Therefore, a constitutional violation is a prerequisite to section 1983

liability.[118]

---

     [115] In his response to defendants' motion for summary judgement Crowell did not list section 1981 as a
separate claim.  However, in argument he specifically referred to section 1981 and claimed that defendants violated
its provisions.

     [116] **Raggs v. Mississippi Power & Light Co.**, 278 F.3d 463, 468 (5th Cir. 2002).

     [117] 42 U.S.C. § 1983.

     [118] **Harrington v. Harris**, 118 F.3d 359, 365 (5th Cir. 1997).

> To establish a § 1983 claim of retaliation for the exercise free speech, Plaintiffs must prove that: (1) Defendants were acting under color of state law; (2) Plaintiffs' speech activities were protected under the First Amendment; and (3) Plaintiffs' exercise of their protected right was a substantial or motivating factor in Defendants' actions.[119]

Additionally, to assert a First Amendment claim, "a plaintiff must allege facts demonstrating that his speech involved a matter of public concern.  To rise to the level of public concern, the speech at issue must have been made primarily as a citizen rather than as an employee addressing matters only of personal concern."[120]

**Qualified immunity defense.**

Defendants Hoffmann, Adams, Crist, and Pena assert the defense of qualified immunity to Crowell's claims that they deprived him of any of his constitutional rights.  They argue that Crowell has failed to show a violation of a clearly established constitutional right so as to overcome their claim of immunity.

Qualified immunity extends to government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[121]  It is an affirmative defense that must be pleaded by the defendant official.[122]  Initially, the Supreme Court described qualified or "good faith" immunity as having both "objective" and "subjective" aspects.  However, the subjective element of the defense proved to be incompatible with Supreme Court's directive that

---

[119] **Id.**

[120] **Schultea v. Wood**, 27 F.3d 1112, 1118 (5th Cir. 1994).

[121] **Harlow v. Fitzgerald**, 457 U.S. 800, 818  (1982).

[122] **Id.** at 815.

insubstantial claims should not proceed to trial, because some courts considered an official's subjective good faith to be a question of fact that necessarily should be decided by a jury.[123]  In order to resolve the conflict, the Supreme Court removed the subjective prong by holding "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[124]

After **Harlow**, determination of qualified immunity claims requires a two-step analysis. First, the court determines whether the plaintiff has shown a violation of a clearly established constitutional right.  If so, the court determines whether the defendant government official's conduct was objectively reasonable under the established law at the time of the incident.[125]

The defendant official has the initial burden to plead his or her good faith and establish that he or she acted within the scope of his or her discretionary authority.  At that point, the burden shifts to the plaintiff to establish that the official's alleged wrongful conduct violated clearly established law.[126]

In this case, Crowell contends that he engaged in public speech as a private citizen and not an employee when he addressed the ACCD Board meeting about his right to classroom instruction and inappropriate conduct in the classroom.  Crowell also claims that he had a right to representation at the grievance proceedings.  Crowell identifies his letter of November 16, 2000,

---

[123] **Id.** at 815-16.

[124] **Id.** at 818.

[125] **Bazan ex rel. Bazan v. Hidalgo County**, 246 F.3d 481, 490 (5th Cir. 2001); **Nerren v. Livingston Police Dept.**, 86 F.3d 469, 473 (5th Cir. 1996).

[126] **Bazan ex rel. Bazan**, 246 F.3d at 489.

his speech at the February 20, 2001 meeting, his letter on February 27, 2001, and his letter to Hoffmann dated February 2, 2001, as incidents at which he attempted to exercise his right to free speech.  However, these incidents do not rise to the level of public concern so as to preclude defendants from asserting their defense of qualified immunity.

By engaging in the identified conduct, Crowell was speaking in the capacity of an employee and addressing complaints concerning his supervisor and his removal from the baton training class.  In his letters to Hoffmann, Crowell expressed his concern about making up the classes and finding out if he needed to reimburse the ACCD for expenses.[127]  He also addressed complaints against his supervisor Patten and allegations that he used profanity at work.[128]  While Crowell addressed his complaints in terms of "freedom of speech" and "right to education," it is apparent from the record that he was not speaking as a private citizen, but was addressing work place complaints from the vantage point of an employee.  Accordingly, Crowell was not engaging in speech involving a matter of public concern, and therefore, his speech was not protected by the First Amendment.

Since Crowell has not established that his conduct rose to the level of protected speech, he has failed to show a violation of a clearly established constitutional right.  Therefore, the Court need not reach the second prong of the qualified immunity analysis and determine whether Hoffmann, Adams, Crist, and Pena's actions were objectively reasonable.  Furthermore, because Crowell's speech does not rise to a level warranting First Amendment protection, he has failed to establish the second element of a *prima facie* case of retaliation actionable under section 1983.

---

[127] Docket Entry 122, Exh. 1-d.

[128]  Docket Entry 122, Exh. 1-d, 1-f, 1-g, 1-h.

31

Based on the foregoing, defendants' motion for summary judgment on Crowell's section 1983 First Amendment and retaliation claim should be **GRANTED.**

**2. Plaintiffs' state law claims.**

**a. Has Crowell demonstrated genuine issues of material fact for trial that Hoffmann, Adams, Pena, and Crist maliciously prosecuted Crowell on the false criminal charge?**

Crowell contends that his arrest by ACCD personnel constitutes malicious prosecution for which ACCD, Hoffmann, Adams, Crist, and Pena are liable.  The elements of a malicious criminal prosecution claim are (1) the commencement of a criminal prosecution against the plaintiff; (2) causation (initiation or procurement) of the action by the defendant; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the absence of probable cause for the proceedings; (6) malice in filing the charge; and (7) damage to the plaintiff.[129]

> Malicious prosecution actions involve a delicate balance between society's interest in the efficient enforcement of the criminal law and the individual's interest in freedom from unjustifiable and oppressive criminal prosecution.  Accordingly, there is an initial presumption in malicious prosecution actions that the defendant acted reasonably and in good faith and had probable cause to initiate the proceedings.  That presumption disappears once a plaintiff produces evidence that the motives, grounds, beliefs, and other evidence upon which the defendant acted did not constitute probable cause.  The burden then shifts to the defendant to offer proof of probable cause.[130]

In this case, Crowell was charged under Texas Penal Code § 37.08 which provides:

> (a) A person commits an offense if, with intent to deceive, he knowingly makes a false statement that is material to a criminal investigation and makes the statement to:
> (1) a peace officer conducting the investigation; or (2) any

---

[129] **Richey v. Brookshire Grocery Co.**, 952 S.W.2d 515, 517 (Tex. 1997).

[130] **Id.** at 517-18.

employee of a law enforcement agency that is authorized by the
agency to conduct the investigation and that the actor knows is
conducting the investigation.
(b) In this section, "law enforcement agency" has the meaning assigned by Article
59.01, Code of Criminal Procedure.
(c) An offense under this section is a Class B misdemeanor.

In this case, Adams with Hoffmann's approval directed Crist to present charges against

Crowell.[131]  Adams testified that initially he intended Crist to charge Crowell with making a false

alarm or report.  Ultimately, the District Attorney charged Crowell with making a false report to

a peace officer or law enforcement employee pursuant to Texas Penal Code § 37.08.  Likewise, it

appears that Crist acted on orders from Adams and Hoffmann who had ultimate approval for

commencing the case.[132]

There is no dispute that the prosecution terminated in Crowell's favor with the dismissal

of the charge.  Consequently, Crowell has established the first three elements of malicious

prosecution against Hoffmann and Adams.

Defendants argue that Crowell cannot establish the remaining elements.  However,

Crowell has presented deposition testimony by Dominguez, Crowell's supervisor at the time and

the person to whom the alleged false report was made, stating that he could not say that Crowell

made a false report.[133]  Furthermore, as noted above, the timing and execution of the arrest

warrant along with the evidence of Hoffmann and Adams' animosity to Crowell raise issues as to

the motivation behind the charges and arrest warrant.  Finally, Crowell has alleged that he had to

hire an attorney to deal with his termination based in large part on the events surrounding his

---

[131] Docket Entry 122, Exh. 3 at 27-30.

[132] Docket Entry 122, Exh. 3 at 29.

[133] Docket Entry 122, Exh. 2 at 45.

arrest.  He also states that he will hire an attorney to expunge the arrest from his record.
Therefore, he has adequately stated damages.

While plaintiff has presented sufficient evidence of his claims against Hoffmann, Adams
and Crist, there is nothing in the record to show that Pena had anything to do with commencing
the prosecution.  Pena's involvement was limited calling Evelyn Crowell and executing the
facially valid arrest warrant.

Based on the foregoing, defendant Pena's motion for summary judgment on Crowell's
claim of malicious prosecution should be **GRANTED**, and defendants Hoffmann, Adams, Crist,
and the ACCD's motion for summary judgment on Crowell's claim of malicious prosecution
should be **DENIED**.

**b. Has Crowell demonstrated genuine issues of material fact for trial that Hoffmann, Adams, and Crist defamed Crowell by presenting an affidavit to the District Attorney stating that Crowell had given a false report to an officer?**

Under Texas law, "[d]efamation is a false statement about a plaintiff published to a third
person without legal excuse which damages the plaintiff's reputation.  Libel is defamation in
written or other graphic form. Slander is orally communicated defamation."[134]  To prevail on a
cause of action for defamation, a plaintiff must demonstrate that a defendant: (1) published a
statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual
malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a
private individual, regarding the truth of the statement.[135]

---

[134] **Moore v. Waldrop**, 166 S.W.3d 380, 384 (Tex.App.–Waco 2005)(internal citations omitted).

[135] **WFAA-TV, Inc. v. McLemore**, 978 S.W.2d 568, 571 (Tex. 1998).

Defamatory statements may be either defamation per quod or defamation per se.[136]  If the defamation is per quod, the plaintiff must show proof of actual damages, but if the defamation is per se, damage to the plaintiff's reputation or mental anguish is presumed without independent proof of damages.[137]  Slander per se requires a showing that the statement imputes the commission of a crime, imputes the contraction of a loathsome disease, causes injury to a person's office, business, or profession, or imputes sexual misconduct.[138]

In this case, Crowell alleges that Hoffmann, Adams, and Crist published defamatory statements about him to the District Attorney in order to obtain the arrest warrant.[139] Specifically, he alleges that Crist communicated that Crowell had committed a criminal act by making a false report to an officer engaged in a criminal investigation.  Crowell bases his claim of defamation on the affidavit submitted by Crist to the District Attorney.  Further, Crowell offered deposition testimony from Crist and Adams to show that Adams checked and approved the complaint and that Hoffmann approved the filing of the charges.

Defendants have not offered any specific authority for the proposition that they cannot be held liable for defamatory statements contained in an arrest affidavit.  If they intended to assert protection based on an immunity, they had the burden to specifically identify the particular immunity defense upon which they were relying and provide evidentiary support for same. They

---

[136] **Southwestern Bell Yellow Pages, Inc. v. Thomas**, No. 05-04-01722-CV, 2006 WL 217665 at 2 (Tex.App.–Dallas January 30, 2006).

[137] **Moore**, 166 S.W.3d at 384.

[138] **Id.**

[139] Crowell addresses his claim for defamation in the context of his claim for malicious prosecution.  While the arguments are intertwined, it appears that he alleges two causes of action.  Docket Entry 122 at 27-31.

have not.  Furthermore, they have not offered any rebuttal evidence or argument to Crowell's arguments in his response to summary judgment.  Defendants' only argument is that plaintiff has not shown that defendants published any statements about plaintiff to a third party without legal excuse.[140]

Taking the facts in the light most favorable to Crowell, he has established the elements for defamation.  Crist, with the approval of Adams and Hoffmann, published a statement to the District Attorney stating that Crowell had committed a crime by giving a false statement that was material to a criminal investigation.  The statement was defamatory per se concerning Crowell. Crowell has offered evidence showing that at least, defendants were negligent about the truth of the statement, and at worst acted with malice.

Based on the foregoing, defendants' motion for summary judgment on Crowell's claim of defamation against Hoffmann, Adams, and Crist should be **<u>DENIED</u>**.

**c. Has Crowell demonstrated genuine issues of material fact for trial that Hoffmann, Adams, Pena, and Crist assaulted Crowell when they arrested him on the criminal charge?**

Crowell alleges that defendants Pena and Crist assaulted him when they arrested him.  He claims that they grabbed him around the neck, twisted his arm, hurt his wrist with the handcuffs, and generally roughed him up.  Apparently, Crowell believes that Adams should be liable because he was Pena and Crist's supervisor and directed the arrest along with Hoffmann who was the overall supervisor.

At the outset it should be noted that while Crowell states in his response to summary judgment that facts exist to support a claim of assault, he does not expressly argue the claim in

---

[140] Docket Entry 109 at 25.

36

his brief.[141]

Under Texas law

an assault is both an offense against the peace and dignity of the
State, as well as an invasion of private rights.  For that reason, the
definition of assault, whether in a criminal or civil trial, is the
same.  Under the Texas Penal Code, a person commits the offense
of assault if the person "intentionally or knowingly causes physical
contact with another when the person knows or should reasonably
believe that the other will regard the contact as offensive or
provocative...." [W]hile proof of injury or intent to injure may be a
requirement under other provisions of the penal code, actual injury
is not required under section 22.01(a)(3).[144]

Crowell cannot survive defendants' motion for summary judgement.  There is no dispute

that a warrant for Crowell's arrest had been issued by Bexar County, and the warrant was valid

on its face.  There is no dispute that defendants executed the warrant.  In Texas, an officer

making an arrest is permitted to use all reasonable means to effect the arrest.[145]  "No greater

force, however, shall be resorted to than is necessary to secure the arrest and detention of the

accused."[146]

While the defendants did not offer Crowell the opportunity to self surrender, it is not

apparent from the record that the force they used was so excessive as to give rise to a claim for

assault.  Evidence in the record shows that Crist grabbed Crowell.  The parties dispute whether

Crist grabbed Crowell's neck, but there is not an allegation that he choked Crowell.  Pena

---

[141] Docket Entry 122 at 2.

[144] **Foye v. Montes**, 9 S.W.3d 436, 441(Tex. App.-Houston 1999) (internal citations omitted) (explaining and relating  civil assault to Tex. Pen.Code Ann. § 22.01(a)(3) (Vernon 1994)).

[145] Tex. Crim. Proc. Art. 15.24.

[146] Tex. Crim. Proc. Art. 15.24.

37

handcuffed Crowell.  When Crowell complained that the cuff hurt his wrist, Pena loosened the

cuffs.  Crowell admitted that the defendants may have felt that they needed to use some force

because of his size at the time.[147]

Furthermore, Crowell does not address the ACCD's claim of governmental immunity.

According to the ACCD, the Texas Tort Claims Act creates a limited waiver of governmental

immunity for political subdivisions.  Immunity is waived for injury caused by an employee's use

of a motor vehicle within the scope of employment, injury caused by a condition or use of

tangible personal or real property, or premises defects.[148]  Crowell does not argue that his assault

claims fall into one of these categories.

Based on the foregoing, defendants' motion for summary judgment on Crowell's assault

claim should be **GRANTED**.

### d. Has Evelyn Crowell demonstrated genuine issues of material fact for trial that defendants Hoffmann, Adams, Crist, and Pena's intentionally inflicted emotional distress on her?

Under Texas law, an IIED cause of action is considered a "gap filler' and should not be

used as an additional remedy to add to damages that are available from well-established causes or

to exceed the statutory limits on mental anguish damages.[149]  To establish a claim for IIED, a

plaintiff must show that: (1) the defendant acted intentionally or recklessly; (2) the defendant's

conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional

---

[147] Docket Entry 109, Exh. B at 235.

[148] Tex. Civ. Prac. & Rem. Code § 101.021.

[149] **Hoffmann-La Roche Inc. v. Zeltwanger**, 144 S.W.3d 438, 447 (Tex. 2004).

distress; and (4) the resulting emotional distress was severe.[150]  "Extreme and outrageous conduct is conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"[151] "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[152]

In this case, Evelyn Crowell bases her IIED claim on defendants' calls requesting Crowell to come into work to discuss an investigation, their subsequent arrest of Crowell, and their failure to return a house key.  Evelyn alleges that Hoffmann and Adams directed Crist and Pena to make the calls which frightened her; Adams, Pena, and Crist arrested and roughed up her husband causing her distress when she learned of the arrest and viewed his torn clothing; and Hoffmann, Adams, Crist and Pena failed to return Crowell's house key causing her fear for her safety. Evelyn claims that she became physically ill, nervous, and had trouble sleeping.

Defendants' actions do not rise to the level of extreme and outrageous conduct.  There is no dispute that on July 19, 2002, defendants Crist and Pena called plaintiffs' home telephone. Crist spoke directly with Crowell, and Pena spoke with Evelyn.  Crowell told her that he spoke to Crist, and she heard Crowell say, "Tell me what you want me in for.  Just tell me what you want me in for."  Later, when Pena called, Evelyn answered the phone, and she became very nervous. According to Evelyn, Pena's voice was very, very loud, and Pena told her, "Ma'am we need your husband to come in here.  We need to him to come."  Evelyn stated that she asked Pena why her

---

[150] **Id.** at 445.

[151] **Id.** (quoting **Twyman v. Twyman**, 855 S.W.2d 619, 621 (Tex.1993) quoting Restatement (Second) of Torts § 46 cmt 46 cmt. d (1965)).

[152] **Id.**

husband needed to come, but Pena would not give a reason.[153]  After Pena finished speaking to

Evelyn, he informed Adams of the result of his call.  Adams then attempted to call plaintiffs'

home, but no one answered the call.[154]

Nothing in Evelyn's deposition or anything else in the record shows that either Crist or

Pena's behavior was extreme or outrageous when they called to request Crowell to come and

discuss the investigation.  While Evelyn complains that Pena spoke very loudly, she does not

suggest that he yelled or said anything impolite, and in fact, Evelyn admits that Pena respectfully

referred to her as "ma'am."  The most disconcerting features of the calls to plaintiffs were Crist

and Pena's refusal to be forthcoming with the reason for requesting Crowell's presence.

Defendants arrested Crowell on a facially valid arrest warrant.  Their actions in executing

the arrest warrant were not extreme or outrageous, and were not directed towards Evelyn.

Furthermore, the failure to return the house key, whether intentional or not, was no more than a

mere annoyance.  While Evelyn may have been subjectively disturbed by these events, she has

not established that defendants' actions rose to the level of extreme and outrageous conduct.

Accordingly, defendants' conduct does not go beyond the limits of decency nor was it so

atrocious as to be intolerable.  Therefore, defendants' motion for summary judgment on Evelyn

Crowell's IIED claim should be **GRANTED**.

## VII. Recommendation

Based on the foregoing, it is my recommendation that defendants' motion to strike

---

[153] Docket Entry 109, Exh. C at 67-72.

[154] Docket Entry 122, Exh. 5 at 49.

(Docket Entry 125) be **GRANTED** in part and **DENIED** in part and defendants motion for summary judgment and supplemental motion (Docket Entries 109 and 138) be **GRANTED** in part and **DENIED** in part, as set forth in this Memorandum and Recommendation.

Specifically, summary judgment should be granted in favor of defendant Ben Pena on all claims made against him, and he should be dismissed from the case.  Defendant Alamo Community College District should be granted summary judgment all claims against it except for the Title VII and TCHRA claims of retaliation, and to the extent that it can be held vicariously liable for the actions of its employees Hoffmann, Adams, and Crist, the state law claims of malicious prosecution and defamation.  Defendants Hoffmann, Adams, and Crist should be granted summary judgment on all the claims against them except for the state law claims of malicious prosecution and defamation.

### VIII. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Memorandum and Recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the District Court.[155]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.**  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the

---

[155] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

District Court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court.[156]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Memorandum and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[157]

      **SIGNED** on September 1, 2006.


*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[156] **Thomas v. Arn**, 474 U.S. 140, 149-152 (1985); **Acuña v. Brown & Root, Inc.**, 200 F.3d 335, 340 (5th Cir. 2000).

[157] **Douglass v. United Servs. Auto. Ass'n**, 79 F.3d 1415, 1428-29 (5th Cir. 1996).